and tell us who you are and who you represent. Please call the case. Starting with the affluent. Good morning, Your Honors. Assistant Appellate Defender Rachel Moran, on behalf of Carolyn Wright. State. Good morning, Janet Mahoney, on behalf of the people of the state of Illinois. Each side is 15 minutes, so we don't look at our watches in this division. So try and keep it interesting and move it along and we'll be fine. I've seen Ms. Moran use some time for rebuttal. Don't worry about it. You'll have it. I can assure you this panel has read the briefs, looked at the case law, including the motion to supplement additional authority from this morning, and we're ready to go. Anytime you're ready. Good morning, Your Honors, and may it please the Court. I am Rachel Moran and I represent Carolyn Wright. Your Honors, Illinois courts have repeatedly held that other crimes' evidence must be carefully limited and that erroneous admission of such evidence ordinarily calls for reversal. The problems in Ms. Wright's case were twofold. First, the trial court admitted evidence of a prior stabbing that was irrelevant and unnecessary and carried a grave risk of prejudice to Ms. Wright. Second, the parties compounded that error by tendering an incomplete jury instruction on the other crime's evidence. Turning to my first point, the Court erred when it denied Defense Counsel's motion in limine to exclude evidence that three-and-a-half months before the charge stabbing, Ms. Wright allegedly stabbed her ex-boyfriend, Lino Williams. But Ms. Wright waived that. Pardon me? Ms. Wright waived that? She didn't preserve it for appeal? There was a motion in limine, and then thereafter, though, when it was allowed, it wasn't preserved in the record. No, Your Honor, that is a point of contention among the parties. However, this was preserved. As Your Honor noted, there was a motion in limine in which Defense Counsel asked the Court to preclude, and I quote, evidence of any domestic violence involving Ms. Wright, involving Wright and Williams, and argued that such evidence was inadmissible other crime's evidence. The Court granted that motion in part. The Court granted the Defense Counsel's motion to preclude evidence of a restraining order. However, it did not grant the portion to exclude evidence of the prior stabbing itself. But I guess the question would be, Ms. Moran, is conceding that in the post-trial motion, it's mentioned, and we don't need a lot of detail, but at the time it's presented, at the time they called the ex-boyfriend, did the defense attorney object again, raise it for the purposes of the record, right before the ex-boyfriend testifies? No, she did not, Your Honor. Then how is it not forfeited? Your Honor, when a motion has been litigated in a motion in limine prior to trial, Defense Counsel is not required to again object, already knowing the answer, in order to preserve it at trial. And the State has not, did not contend that that is so. It's not what case, though, Counsel. What are you relying on when you make that argument? Your Honor, I'm relying on the absence of cases indicating that Defense Counsel is required to object during the trial. There are, although this wasn't a litigated matter, and so I did not cite any cases in my reply brief on this point, because the State did not raise that issue, I would be happy to supplement with cases, if Your Honors would like, saying that that's not necessary. No, I don't think we'll need a supplemental brief. Your Honors, the problem with the other crime's evidence is that it was irrelevant and unnecessary. The issue here, the State introduced this evidence for three purposes at trial, intent, absence of mistake, and motive. The State has abandoned two of these arguments on appeal and only argues motive at this point. Motive, it was not relevant to show motive. A motive is a reason to act, in the simplest definition. And here, the State's theory was that Ms. Wright was motivated to act because she was jealous of the victim, Brandy Bolden. The act of a prior stabbing does not establish jealousy. And the most relevant cases on point, both cited in my brief, would be People v. Bobo and People v. Thigpen. In Thigpen, the court dealt with a prior, the charged case was a murder by shooting, and the defendant had previously shot two other people. The State sought to introduce this evidence to show motive, that he was motivated to act based on gang retaliation. And this court held that the prior shooting simply established propensity, it did not establish a motive. In People v. Bobo, the issue was sex offenses, but the same issue at stake. The State sought to introduce evidence that the defendant had previously sexually abused high school students, and was charged with sexually abusing another high school student. Counsel, let me ask you this. Are you agreeing that there was evidence of a prior stabbing? Your Honor, I am agreeing that the State presented evidence through Lino Williams of a prior stabbing. And let me ask you this, as far as the prejudice versus the probative value of that prior occurrence, do you want to argue that at all? Yes, Your Honor, it had no probative value or minimal, and it was highly prejudicial. This court has repeatedly recognized that evidence of other crimes is highly prejudicial, and particularly when it involves the same kind of offense at issue, because it leads the jury to assume this is what this person does. And the jury in this case would have assumed Carolyn Wright is a person, when she gets angry, when she gets upset, she stabs people. That is what this evidence showed. As far as the balancing test that was conducted in this case, even that was not, the court did conduct what he called a balancing test, but it's worth noting that the court balanced on the issues of identity, absence of mistake, and absence of accident, only one of which the State was even trying to introduce this evidence for. And when the State corrected the court and said, actually, Your Honor, we're seeking to introduce it for intent and absence of mistake and motive, the court said, well, my reason stays the same. So this is not a thorough balancing test, and the court erred when it balanced in favor of the State in this case. Well, if you look at Hunter's on Illinois evidence, there's 42 bases to allow proof of other crimes. And I think courts have reviewed, frankly, have not been very consistent in this area. Taking it as true, your position, that it was not probative, at least not for any of the purposes I can imagine, including identity, although there are arguments for identity, it could be admissible to intent if there was any evidence other than the fact that she absolutely purposely attacked this person with a knife, poorly attacked her. If you point out in your brief, nobody could rationally argue that this wasn't intentional. It's just an identity case. So, how does it rise to, does it arise to plain error, assuming that we're right, that it should have been, the record is not protected? So in the worst case for you, does this arise to plain error, where there's really no basis to let it in? Yes, it does, Your Honor. If this court finds that the error was not preserved, which we would contest that, of course, but if this court finds the error was not preserved, then it does rise to the level of plain error, because this was a close case. This was essentially a she said, she said contest. But you don't argue plain error, do you? We do not, Your Honor, but I'm happy to address it now. This was a case where the victim claimed four days after the offense is the first time we know that the victim identified, that there's evidence in the record that the victim identified Ms. Wright as the attacker on April 8th, 2011. She was attacked on April 4th, 2011. The victim was hospitalized with a collapsed lung and stabbed in the back multiple times. That's true, Your Honor. We're not contesting she was badly injured. She was on drugs? She was on painkillers? She was on some medication, yes, Your Honor. However, it is relevant. And also the ventilator. But later in the lineups and the photo sprints, your client was identified? Yes, Your Honor, she was. The evidence indicates, it's a little bit unclear, but the evidence indicates that Mr. Williams was likely the first person who spoke, who identified Ms. Wright to police. He did not witness the attack, of course. But on the evening of April 4th, Detective McLaurin testified that he spoke with Mr. Williams and Mr. Williams suggested that we don't know what he said, but that's how Ms. Wright's name came up. And Mr. Williams is certainly a person who had a motive to identify Ms. Wright as the attacker. What would the victim's motive be if it was not Ms. Wright? She was in a car with this person for two hours talking about whatever they're talking about. And then, you know, as close as human beings can be without touching each other. And got stabbed repeatedly. Why would she purposely name? And there's no question she was stabbed repeatedly by a horrible, vicious, violent attack. Why would she purposely then name? What motive does she have to lie about who attacked her? Your Honor, if I can first address the comment that she was in the car for two hours. That is the victim's testimony. Mr. Williams told police that the victim did not leave his house until 2 or 3 o'clock in the morning. And she was stabbed shortly after 3 o'clock. The victim, four hours after she finished drinking, had a blood alcohol level of .13. So she was extremely intoxicated in her testimony. And there was no, although the state did attempt to collect physical evidence of the car, there was nothing linking Ms. Wright to it. And so that is solely the victim's testimony, which is contradicted by Detective McLaurin's testimony about the time frame here. Where are you going with that last comment? The testimony was that Ms. Bolden was punched in the face suddenly by your client, tried to exit the car, and your client kept bringing her in, and then did get out of the car, at which time your client allegedly stabbed this woman repeatedly and slit her throat two or three times, in addition to the other stab wounds. I'm referencing as to Justice Quinn's comment that they were in the car for approximately two hours beforehand. That's actually not clear. There's contradictory testimony about whether they were together beforehand. That's why I asked you the question about what followed. It happened, they were in the car together. The question is how long they were together. But the point is you're not saying that she wasn't in the car with him, are you? I am very much saying that, Your Honor. Carolyn Wright presented an L by defense and testified that she was nowhere near Chicago. She was in Dalton. Yes, she was in Dalton, Illinois. Yes, Your Honor. The jury liked that defense. No, Your Honor, but we're not raising a sufficiency of the evidence argument. We're addressing whether this was closely balanced, and this was two different people who gave two different accounts, and there's no physical evidence to support it. There's no confession, and there are some questions. Mr. Brantley exited his car bystander and observed the stabbing. He did, Your Honor, and he is the only other evidence for this state in this case. And Mr. Brantley is certainly a hero in this case, but as to his identification, he admitted afterward that he could give no description to police other than that it was a black woman, an African-American female, who was wearing dark clothing. And he also admitted that wasn't just an identification he made in the spur of the moment or in a 911 call. He had a thorough interview with police the next day and still couldn't provide any identification other than an African-American female wearing dark clothing. But he identified, he made the ID in the lineup. He did, Your Honor. Yes. If you know, because it's not in the briefs, where does the defendant live compared to where the attack occurred? The defendant lives, well, at the time of the incident, the defendant lived approximately six blocks away. I cannot recall an exact address, but it was fairly near. She and Mr. Williams lived relatively close to each other. But where the attack occurred, when the victim gets stabbed, allegedly by Ms. Wright, it's on the street some blocks from the ex-boyfriend's place. Was that closer to Ms. Wright's home or further? I am honestly not sure, Your Honor. I apologize. No problem. It is. She was on Union Street. She wanted to go to Union Street. Yes. The attack occurred about two blocks away from Mr. Williams' home. I do think it was fairly near Ms. Wright's home. But as far as whether it was closer or not, I'm not sure. That's fine. Yes. Counsel, let me ask you a specific question. The issue of the prior occurrence went to the jury. The jury was instructed on they could review that evidence or consider it as far as intent, motive, or absence of mistake. Is that right? Yes. Okay. Now, is there any case law to suggest that there's any other reason for allowing that prior occurrence testimony that the jury could consider it on, or they restrict those three incidences of intent, motive, and absence of mistake? Well, the jury is instructed, and this addresses actually the second issue, but the jury is instructed it can only consider the evidence for those purposes, intent, absence of mistake, and motive. Right. I agree. But is there a case law on that? I want to know, is there a case law that says that jury is restricted to that or the fact finder is restricted to that and not allowed to look at any of the other reasons why this prior occurrence could have been admitted? I think the most relevant case discussed in the briefs would be People v. Lemley out of the Fifth District, a 2003 case. And in that case, what Lemley essentially stands for is the proposition that if a jury is instructed that evidence is admitted for specific purposes and may be used only for that purposes, and the instruction is wrong in the sense that the evidence should not have been admitted for that purpose, then the limiting instruction is useless, and the jury essentially has free reign to use this for propensity purposes. But that cuts a little bit against the general theory that we can affirm on anything in the record. If we could think of which of those 42 reasons would apply, and I can't, of why they attack an ex-boyfriend, right, so if we could think of a reason, no, but if it's under this, whatever it would be, you know, there's 42 reasons, I'd suggest that case law would suggest we could do that. We could say, well, if it's under this, it's just a mistake, a judge in a trial, and all the lawyers misspoke, only we get to speak correctly. So the state would have to show there's some basis for this, right? Your Honor, the state, it's too late to show that. The state has forfeited its opportunity to do that when it specifically said we are not seeking to introduce this for any other purpose. In the case law, I apologize if I misunderstood Your Honor's question. The case law most relevant to that issue cited in the reply brief is People v. Highland, and actually there's quite a few other cases cited on pages 2 and 3 of Ms. Wright's reply brief, which stand for the proposition that once the state has failed to argue evidence for admission for a certain reason, it has abandoned that argument on appeal and cannot raise a new issue, which is what the state has done in this appeal when attempting to raise the continuing narrative exception. That is improper and should not be accepted by this court. Have you waived any plain error argument on the first issue because you don't argue in your brief? Your Honor, we did not argue plain error. We would agree with that. Can you go to the instruction issue? I'd love to, Your Honor. Turning to the second argument, the instruction, the error that happened here is IPI 3.14, and it's missing the bracketed portion, which informs the jury that it is for them to determine whether the defendant was involved in that offense, and if so, what weight should be given to the evidence. It is an issue of first impression in Illinois. The absence of this portion of the instruction in the context of IPI 3.14 has never been addressed in a published case. However, there are a number of cases dealing with similar instructions or dealing with other errors in the context of 3.14 that are on point. But again, we only get that under plain error. Is that right? Your Honor, no. In this case, no. We did argue plain error. It's not preserved. I understand that you're right. But agreeing with you, you did raise plain error on this part of it under 3.14. So before we address it, we have to agree with you that it constituted plain error. Your Honor, we also did raise ineffective assistance of counsel on this point. So this court is welcome to address the issue as to ineffective assistance of counsel. And to address the people versus Eppinger, which the state, I'd like to address that right now if possible, which the state cited yesterday. We would agree that the single sentence in Eppinger seems fairly clear. And so, although the Supreme Court has never addressed this matter, and we certainly think it should, the sentence it included says that second-pronged plain error, the defendant must show structural error. And we would also agree that this type of error has never been held to be structural error. So we would ask this court to review either as ineffective assistance of counsel or I would also contend Rule 451C, which was cited in our brief and is the rule saying that a substantial defect in a jury instruction is not waived. It would be our position that if the Supreme Court does decide that structural error and second-pronged plain error are equivalent, then Rule 451C can no longer be coextensive with the plain error clause because it would be written essentially out of existence if that were so. How does it fit in this case, in the Thompson case? It's a very limited class of cases. It's complete denial of counsel, denial of self-representation trial, trial before a biased judge, denial of public trial, racial discrimination, selection of a grand jury, and a defect of reasonable doubt instruction. That's what the Thompson case lists. For structural error? For structural error, yes, Your Honor. So what in this case falls within that? Nothing, Your Honor. This is not, this is, if this court chooses to find structural error, we would certainly not have a problem with that, but it would be an extension of structural error. And so we're not advocating for that. Going back to your argument as to the possible and effective assistance of counsel, the argument then in this case really comes down to whether the trial counsel, during the instruction conference, concedes that he would have to concede. And again, understanding how this works, nobody even talks or anything except generally the judge, that there was an altercation between the boyfriend, the ex-boyfriend, and Ms. Wright some four months earlier. And the argument is that Ms. Wright's testimony says, I only hit him in the head with a lamp, and the boyfriend's testimony says, No, no, she hit him in the head with a knife. We'd have to find that that was so egregiously different that the trial court, that the defense attorney either failed to be a defense attorney or that Ms. Wright was substantially prejudiced by that failure to add the third thing. So it's up to the trial jury to decide whether it occurred or not. Because she said it occurred. She just said, I hit him with a different, a lamp that was lying on the front lawn, as opposed to a knife that I had on me. Your Honor, Ms. Wright did not admit to an offense at all. She admitted that in self-defense, she threw some sort of decorative lamp at him after he attacked her and bloodied her with a rake. But the committee comments indicate that this portion of the instruction must be given that she was involved in the offense that was the subject of the instruction. And she explicitly denied that. Doesn't it say in the committee notes to IPA 314, when the defense concedes that the defendant performed the conduct or committed the offense? Either one. The offense that was the subject of the instruction, Your Honor. I agree. Then it said it should not be given. That's not really mandatory language, is it? Should not be given. Should is not necessarily a mandatory language, Your Honor. But the state has not conceded that in that case the court has the option of deciding whether or not to. The state has not argued that. The state has agreed that it should be given unless the defendant concedes involvement in the offense. And that is the state's position on this case, which we would disagree with. The defendant admitted to involvement in an entirely different act that was not an offense at all. And the jury was effectively left to presume that Ms. Wright was indeed involved in a prior stamping. So you would argue the conduct that she engaged in was the lifting of this lamp and hitting me with that and not stamping? Yes, Your Honor. And that was not an offense at all. And that's the error. Well, hitting me with a knife wouldn't be an offense at all either, right? If he's indeed, as he said, I hit her with a rake. And I guess the timing would be different. But you're right, right? I'm sorry. I apologize for interrupting, Your Honor. I don't think Mr. Williams agreed that he hit her with a rake until afterward. And so he certainly, he said they got in a disagreement, he was leaning down, and all of a sudden she went after him with a knife. So the jury was left to assume this is a violent woman who stabs people when she gets upset. The errors compounded each other. The error in the other crimes evidence combined with the instructional error created a situation that is exactly what this court has repeatedly condemned, a situation where the jury is left to assume this is a person who has done this in the past and is likely to do it again. Well, you have some time for reply. Thank you, Your Honor. Ms. Mahoney. Good morning. Again, Janet Mahoney on behalf of the people of the state of Illinois. What possible reason did the state have to put in the prior attack on the ex-boyfriend? Think of one. Motive. Motive. Intent. Identity. Absence of mistake. Continuing narrative. I mean, that's just right there. We could probably, if we pulled out all 42, we'd probably find a lot more than that. And because this is an evidentiary ruling. Let's go to motive. Let's go to motive. How does it show motive? Where do you get jealousy from? That's the argument. Obsession. Jealousy. Obsession. She's going to wreak havoc on this ex-boyfriend's life and anyone she perceives taking her place in his life. Why else would she stab Brandy, a woman that has met her before? There's clearly motive for attacking the victim. What's the motive she has for stabbing the ex-boyfriend when she went over there to complain, quit calling me? Isn't it kind of counterintuitive that if she's over there complaining, you quit calling me, mister, and she stabs the guy? It wasn't necessarily quit calling me. She went over there under the pretext that she was getting phone calls from his phone. Well, he didn't admit that, right? No, he didn't admit that he was phone calling her. He did not. He showed her the phone and saw somebody had been calling her with his phone number, right? But then she said, can I come in? And he said no. Because it's a motive. I'm sorry. He showed her the phone and she agreed about those calls. And then after that she asked to go in and he said no. And so he returned to his house and he was inside and he heard something kicking on the basement window. And then he came back out. And there she is. His gate is unlatched. She's in a place that he doesn't want her to be. And he goes to latch the gate and she comes at him with a knife. He did not pick up that rake until after she went at him with the knife. We're not arguing, we're not suggesting that was, I actually suggested, of course, it was okay to stab him if she had the rake. That's not the concern. The problem with this is there's, I don't want to say it's a mini trial because it'll probably last two minutes. So your theory is that it shows jealousy for the ex-girlfriend to go by, tell the ex-boyfriend quit calling me, and then stab the ex-boyfriend would show that she was jealous. I'm missing that part. I would think that, especially in this day and age, if I'm telling somebody don't call me again and I stab them because they called me, that would indicate I want to be left alone and I'm not jealous. Well, I'm not 100% crystal clear about the fact that she showed him the phone and he actually saw his phone number. What I do know is that she said she's getting these phone calls from him. She's trying to call him and he doesn't answer the phone yet. A few blocks later she's in front of his house and she calls him and he answers. She never called him ahead of time. She went over there to pretend like he's calling her on her phone. It was really when she asked to come into his house and he said no, that she snapped. How does that show it's jealousy? I don't want you in my house. It's obsession. It's obsession as much as it is jealousy. Isn't it more of a guess? Because what evidence was there of her being obsessed with him? I don't, I can't, and I'm, you know, I believe the worst of every human being I've ever met. And I can't, I don't know. And for right now I suppose. For the purpose of this argument, I'm having a huge problem coming to the conclusion that she's obsessed with somebody that she went over there and stabbed him when she was complaining about calling me. Let me ask you this question. While the victim was on the stand, didn't she testify as to what the motive might have been? Because the defendant told her it's because you were dancing with him. Didn't she make that statement? She did make the statement. And when she's getting attacked, why, why, it's because you were dancing with him. Correct. And doesn't that show motive for the attack on the victim? Well, even though that shows motive, it doesn't mean that we can't bring in additional motive. You're not limiting the amount of motive. Well, let me ask you this. Doesn't Thigpen, People v. Thigpen, say that other crimes evidence shouldn't be used if you can get an alternative method to get the motive in? Isn't that what Thigpen says? Well, I don't think the state is required to water down their case just because they have evidence. The state's allowed to present their case. And in this case, it established the obsession even more. Well, I'm concerned about showing this propensity towards violence, maybe argue that this is what your prior incident showed and not motive. I mean, isn't the court trying to protect the defendant's rights on those issues? And, again, Thigpen says once you get motive in, you shouldn't use other crimes evidence if there's an alternative method. Remember, defendant's denying that she's there. And so even though Brandy testifies, the defendant's stabbing me and said it was because we were dancing, the defendant's denying that she's there. How do we establish that the defendant's there? Her obsession with her ex-boyfriend and anyone who may take her place in her ex-boyfriend's life. The prior stabbing helps to establish that identity. Thank you. There were no charges that were brought as a result of this incident, either the stabbing or the throwing of the lamp, whichever it was? Well, if you recall, there was a motion in Lemonet to exclude the order of protection that came after the stabbing incident. So while maybe there might not have been an official charge or an official conviction, there was police action taken. The police were called and they did come to the house. So there was corroboration that this event took place. There was no ambulance called and Mr. Williams didn't get treatment for this? No, he didn't. But again, the police came to the house and there was an order of protection. That was not introduced as evidence. That motion in Lemonet was granted for the defendant, but that is the evidence to suggest that this event did not take place, it did take place. By what I'm getting at, I was getting at the lack of clarity on the injury to Mr. Williams when they were standing on either side of the gate. That's what you put in? Well, again, he testified that he saw the knife coming at him. He leaned back and it came across his forehead. So in terms of a penetration wound, no, he didn't have a penetration wound. He didn't need to go to the hospital, although that was his good fortune that he could see that knife coming at him and he could lean back. So it wasn't battery, it was an assault? No, it was battery. Counsel, you argue on appeal that the prior occasion incident should be admissible under the argument of motive, state of mind, identity, and continuing narrative, is that right? Correct. And you're still arguing those today? Correct. And any of the other 42, if you see one that you think fits it better, because we are here on an evidentiary ruling and you can affirm on any basis you want. Is there any case law specifically that addresses this issue on these kind of instructions? If the jury made their ruling based on the instruction that was given them, why should we be able to use other reasons that are allowed? Because it's the judicial deed and not the judicial words that are under review here today, and the introduction of this evidence was proper. It could be proper for many reasons, including those included in that instruction, and the defendant actually would have had a benefit that additional reasons weren't included in that instruction that the jury could have used. But you don't cite a case of that proposition in your brief, do you, Ms. Mahoney? Or that you can affirm on any reason? Again, this is black letter law. I'm the one who actually said that. But in terms of citing it, do you cite a case in your brief with a proposition that when a trial court instructs a jury that there are three grounds for the jury to consider for the purpose of allowing in proof of other crimes, A, B, and C, that on appeal, after looking at Hunters, an appellate lawyer or an appellate judge can say, I've got six more. Those three don't exist. Those three were wrong. But these six, had anybody thought of them? Had anybody thought of these prior to trial or during trial? The jury could have been instructed correctly on these six grounds. Do you cite a case with a proposition that's okay? I don't cite a proposition for that's okay because the forfeiture was raised in the reply brief. But there is law out there that says that maybe the state pursued it on this ground at trial with other crimes evidence. But we're going to affirm it. You mentioned what I just asked in your blue brief. Had you raised that, they wouldn't say, well, they forfeited it. Well, they didn't limit in their brief. And they can only say these following things because that is the only thing they said at trial. Because the black letter law out there is you can affirm an evidentiary ruling for any reason, yet now in the reply brief they are citing People v. Highland, which is a completely different case. And there also is a petition for leave to appeal filed on that case. Could a lawyer at trial say, Judge, I want this prior occurrence or incident admitted, based on any one of the bases that are included, any one of the 42? I think that you need to tie it up with some of the, for example, you were questioning me about motive and why is it motive. If you just leave it out there, any 42, you're going to risk that you're not going to be able to connect it to any of those 42 reasons. That's why you argue some specific ones. But let's say that there's a better one out there that wasn't mentioned that's really easy to say, you know what, it was other crimes evidence. It should have been considered by the jury. What are we doing here? Are we going to send this back for a new trial when this evidence should have been before the jury? So then they're going to go and have the motion again, and they're going to bring up the reason that was decided as a reason, and then we're going to have the exact same trial. It would take about eight hours, and it's not like it's difficult to do, frankly. A retrial, you have the same four or five witnesses. I suppose they'd call the coppers again. For all we know, everyone in this case is dead. No, I, okay, no. I think the worst of people. All right, let's take that as true, Ms. Mahoney. Then you'd be able to use the transcripts, couldn't you? And then you can hint, having been a prosecutor, they're dead. They must have been killed by Mrs. White. I know I didn't kill them. Right? So that's as bad as retrials are. This isn't a case that's calling out for a retrial. It just isn't. It's simple. It's other crimes evidence. It's textbook. It's simple. And as far as the instruction goes, it's forfeited. It wasn't the defense counsel never tendered saying we needed this bracketed phrase, never objected. It was never in a post-trial motion. Counsel doesn't argue plain error under the first prong. And under the second prong, second prong is structural error, and an error in instructions is not structural error. In the people versus sergeant case, in a case that dealt with a different instruction but similar bracketed phrase, they left out the entire instruction. And the Illinois Supreme Court said that's not structural error. So if it couldn't be structural error in sergeant, it cannot be structural error here. Counsel, what was the state trying to prove, that there was a knife attack during this prior occurrence or that there was an incident or a fight? Well, it's kind of both, but it's really there's an incident. It happened to involve a knife, but you can't sanitize it by saying that there was a knife involved in it. It's either an other crime or not. And in this case, it was an altercation that involved a knife. Did she have any witnesses for her alibi? No. No, she did not. And also keep in mind for that, Brandy knew her. She met her before. She was introduced to her as defendant's girlfriend, and Brandy was introduced as a cousin, i.e., more evidence of the obsession, because defendant was afraid to introduce any woman that he knew as a friend. But Brandy knew her. This isn't a stranger coming out of nowhere and attacking her. She knew her. Defendant referred to her by name when she saw her in the street walking in the rain. Brandy offered her a ride, and they sat in the car talking for two hours, 30 minutes, whatever it is, they're right there next to each other talking away. In trying to balance this in terms of what the event was, and the state argues that it was a knife that was used against Williams, and she says that she first threw a snowball, and later that she said she threw a lamp. She denies completely that there was any knife involved. And that goes to the weight. That would go to the weight of the other crime evidence, and the jury was instructed that they were to weigh that evidence. They were given that instruction. Anything else? Unless you have any other questions, the people ask that you affirm the conviction and sentence. Thank you. Ms. Moran, briefly. Very brief rebuttal, Your Honors. I'd like to address two statements the state's attorney made, both of which are contradicted by existing case law. The first is in response to Justice Connors' question that the state is not limited in the amount of motive. That is untrue. As Justice Connors noted, people versus Thigpen, people versus Manning out of the Illinois Supreme Court, people versus Bobo, all of these cases stand for the proposition that if other crimes' evidence is unnecessary because there is other evidence, less prejudicial evidence to prove that same point, the state is indeed limited in the amount of motive. Here, as the state itself concedes, there was plenty of evidence to support the state's theory of jealousy, and that all of this other evidence was less prejudicial than the knife attack. The state should, even if it was relevant to show motive, it should not have been admitted. The second point as to the discussion about whether this court can affirm for any basis, that is also there are numerous cases on point, not just people versus Highland, people versus Miller. It says we must adhere to the rule that a party is not permitted to use one theory of admissibility at trial and argue an entirely different theory on appeal. People versus Walker. It is well settled that a theory for admission of evidence different from the one advanced in the trial court cannot be urged on appeal. The state's argument today is not what it argued in its brief, and this court should not affirm for reasons other than what the state requested the trial court to do at trial and what the jury was instructed was admissible for that purpose. Thank you. Thank you for the briefs and your arguments. And this case will be taken under advisement, and this court will be adjourned.